ANDERSON, Circuit Judge, dissenting:
I respectfully dissent. Although this is a close case, I am persuaded that there are material issues of fact regarding whether Cableview entered the settlement with Time Warner under duress. First, I believe that there are material issues of fact regarding whether Time Warner, through Sieiro and the other Time Warner regional operations directors, negligently misrepresented to Cableview that Sieiro had authority to consent for Cableview to transfer its operations to FTS or that FTS could assume Cableview's previous responsibilities via new vendor contracts without the necessity of a formal assignment. Although Gravely testified during litigation that he knew that Sieiro did not have authority to consent to the transfer, there is evidence in the record from which a reasonable jury could conclude that Sieiro and the other Time Warner regional operations directors represented to Schieszer and others at Cableview that they did have such authority. For example, there are emails suggesting that there was a miscommunication at Time Warner regarding the approval of the Cableview-FTS transaction. And there are emails referencing new vendor contracts (entered into before the March 2, 2012 closing date and before Blackwood's February 28 telephone call) under which FTS would assume Cableview's duties. I am persuaded that this and other record evidence could lead a reasonable jury to conclude that Sieiro mistakenly indicated Time Warner's consent to the transfer without consulting with the proper people at Time Warner or mistakenly indicated to Cableview that FTS could assume Cableview's duties via new vendor contracts without a formal assignment.
Regarding whether it was reasonable for Cableview to rely on representations that were not in writing, as noted above, there is evidence suggesting that, Time Warner offered and, in some regions, entered into new vendor contracts with FTS. These new vendor contracts are not in the record; however, emails in the record referring to the contracts would allow a reasonable jury to conclude that the new vendor contracts allowed FTS to assume Cableview's previous responsibilities with respect to installing and maintaining the cable wires, making a formal written assignment of the Installation Agreement unnecessary.[1]
*1307 Finally, there are emails in the record suggesting that substantial implementation of the transfer from Cableview to FTS was commenced by mutual consent before Blackwood called Schieszer and told him that Time Warner would not consent to assign the Installation Agreement unless Cableview paid Time Warner to settle the McLarty indemnity action. Based on these emails, a reasonable jury could conclude that Cableview had no reasonable alternative but to agree to pay Time Warner for the McLarty indemnity claim.
Because I believe that such material issues of fact indicate that the district court erred in finding that there was a valid settlement agreement as a matter of law, I respectfully dissent.

The majority relies on Cableview's statement in its reply brief that it "uncovered" in discovery the new vendor contracts to support its conclusion that Cableview could not have reasonably relied on the new vendor contracts. But Cableview president Schieszer emailed Perkins at FTS regarding the new vendor contracts in late February 2012, indicating that, "[Sieiro's assistant at Time Warner] says this has to be filled out and faxed to her ASAP. She says this should be all you need." This and other emails (e.g., emails relating to the new vendor contracts) could lead a reasonable jury to find that Cableview knew about the new vendor contracts and relied on them during the time leading up to the Cableview-FTS transaction. In light of record evidence that Cableview's agents, including its president, did know of the vendor contracts, and in the context of the reply brief, Cableview's reference in its reply brief to "uncover[ing]" the new vendor contracts in discovery reasonably refers merely to Cableview's counsel uncovering the contracts in discovery.